**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>          v.<br><br>ELITE LIVING HOME CARE and ELITE<br>LIVING HOME CARE, LLC,<br><br>                    Defendants. | Case No.  2:24-cv-01035-JFM |

## FIRST AMENDED COMPLAINT

Plaintiff, John Doe (hereinafter "Mr. Doe"), by and through his undersigned counsel, Justin Robinette, Esquire, hereby submits and files the following First Amended Complaint against Defendants, Elite Living Home Care and Elite Living Home Care LLC, averring in support thereof, as follows:

## I.       PARTIES:

1.        Plaintiff, John Doe (hereinafter "Plaintiff" or "Mr. Doe") is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides at ███████████████████████████████████████████████████████████. Plaintiff's home address has been redacted consistent with the Court's Order dated March 13, 2024 (ECF No. 4).

2.        Defendant, Elite Living Home Care, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 610 S. 3rd St., Philadelphia, PA 19147 and/or 422 Lanfair Rd., Elkins Park, PA 19027.

3.      Defendant, Elite Living Home Care, LLC, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 610 S. 3rd St., Philadelphia, PA 19147 and/or 422 Lanfair Rd., Elkins Park, PA 19027.

4.      At all times relevant hereto, Defendants employed Plaintiff.

### III.      JURISDICTION & VENUE:

5.      This Court has subject-matter jurisdiction over Plaintiff's Federal claims pursuant to 28 U.S.C. § 1331 because the claims present a Federal question.

6.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over any state-law claims as those claims arise out of the same set of operative facts as the Federal claims.

7.      This Court has personal jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310 (1945), and its progeny.

8.      Venue is proper under Title VII of the Civil Rights Act of 1964 ("Title VII") pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are "alleged to have been committed" in this judicial district, "the employment records relevant to such practice[s] are maintained and administered" in this judicial district, and Plaintiff "would have worked" in this judicial district "but for the alleged unlawful employment practice[s]."  42 U.S.C. § 2000e-5(f)(3).

9.      At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

2

### III.        **EXHAUSTION OF ADMINISTRATIVE REMEDIES:**

10.      Plaintiff has exhausted all applicable administrative remedies and the pertinent

notice of right-to-sue in this matter is attached hereto as Exhibit "A."  Plaintiff's name and

address are redacted consistent with Plaintiff's Motion to Proceed Anonymously filed on this

same date.

### IV.      **CLAIMS FOR RELIEF:**

**COUNT I:**
**HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care**
**LLC)**

11.      All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

12.      Plaintiff identifies as transgender.

13.      Plaintiff's preferred pronouns are he, him, his.

14.      Plaintiff began employment with Defendants as a Home Health Aide in or around

April 2023.

15.      Plaintiff's job duties consisted of providing home healthcare services to residents

of the Defendants in the residents' homes.

16.      Plaintiff was assigned to care for resident, Jihad (sp.) Last Name Unknown

("LNU").

17.      In or around May 2023, it is believed that when Jihad (sp.) LNU, one (1) of the

residents whom Plaintiff was assigned by Defendants to care for, discovered Plaintiff's gender

identity, Jihad (sp.) LNU revealed to other Home Health Aides employed by Defendants, that

Plaintiff was transgender, outing Plaintiff beyond an extent to which Plaintiff felt comfortable to Plaintiff's coworkers.

18.     Plaintiff had not previously identified himself as transgender to the co-employees.

19.     Plaintiff continued to be assigned to the same resident who outed Plaintiff.

20.     Plaintiff identified his preferred name and preferred pronouns of "he," "him," "his," to the resident.  In or around October 2023, the resident frequently misgendered Plaintiff by using incorrect gender pronouns for Plaintiff.

21.     The resident also deadnamed Plaintiff by using a name for Plaintiff that was not Plaintiff's preferred name and was not consistent with Plaintiff's gender identity.

22.     The misgendering and deadnaming was intentional as it continued to occur despite Plaintiff correcting the misgendering with his preferred name and preferred gender pronouns and therefore the misgendering constitutes a form of intentional discrimination.

23.     The Supreme Court of the United States in Bostock v. Clayton County, Georgia, 590 U.S. ___, 140 S. Ct. 1731 (U.S. June 15, 2020), further supports the proposition that treating an employee in a manner that is not consistent with their gender identity can constitute discrimination, and therefore, intentional misgendering of an employee who is transgender can constitute discrimination in violation of Title VII.  See EEOC v. R.G. & G.R. Harris Funeral Homes, Inc., 884 F.3d 560 (6th Cir. 2018), cert. granted by R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC, 139 S. Ct. 1599, 203 L. Ed. 2d 754 (U.S., Apr. 22, 2019), aff'd by Bostock v. Clayton Cnty., Ga., 590 U.S. ___, 140 S. Ct. 1731 (U.S. June 15, 2020).

24.     Defendants have discriminated against Plaintiff because of his sex identified at birth, and another today, under Bostock v. Clayton County, Georgia, 590 U.S. ___, 140 S. Ct. 1731, 1741 (2020).  Bostock recognized, "By discriminating against transgender persons, the

employer unavoidably discriminates against persons with one sex identified at birth and another today."  Bostock v. Clayton County, Georgia, 590 U.S. ___, 140 S. Ct. 1731, 1746 (2020).

25.     A recent decision of the Middle District of Pennsylvania in Doe v. Pennsylvania Department of Corrections, No. 4:19-CV-01584, 2022 U.S. Dist. LEXIS 141656 (M.D. Pa. Aug. 9, 2022), further supports Plaintiff's position in this matter. The defendant argued in that case that "none of the[] incidents were severe enough to constitute a hostile work environment."  Doe v. Pa. Dep't of Corr., No. 4:19-CV-01584, 2022 U.S. Dist. LEXIS 141656, at *12 (M.D. Pa. Aug. 9, 2022).  The court disagreed.  Id.  And part of the reasoning for the court's decision to permit the hostile work environment claim in Doe v. Pennsylvania Department of Corrections was because of the "almost daily misgendering" upon which "a reasonable juror could find a hostile work environment." Id.

26.     Reported case law in this jurisdiction has held that misgendering can constitute harassment based on sex as a matter of law. See Doe v. Triangle Doughnuts, LLC, 472 F. Supp. 3d 115, 129 (E.D. Pa. 2020).

27.     Federal case law outside of this jurisdiction has also recognized that misgendering can constitute harassment based on sex. See Prescott v. Rady Children's Hosp.-San Diego, 365 F. Supp. 3d 1090 (S.D. Calif. 2017).

28.     It is the position of the Equal Employment Opportunity Commission ("EEOC") that misgendering can constitute harassment based on sex.  See Lusardi v. Dep't of the Army, Appeal No. 0120133395 (EEOC Mar. 27, 2015); Jameson v. U.S. Postal Serv., Appeal No. 0120130992 (EEOC May 21, 2013).

29.     The resident at issue also referred to Plaintiff as a "bitch" (hereinafter "b---h") in one instance.

30.     The resident also sent Plaintiff a voice message stating that the resident knew Plaintiff was male, but to the resident Plaintiff was female, or words to that effect.

31.     Plaintiff reported his concerns about the resident to Nicole Hopkins, Owner and Administrator of Defendant, Elite Living Home Care.

32.     At one point, Plaintiff overheard Ms. Hopkins on speakerphone with the offending resident, and during the conversation, Ms. Hopkins kept repeatedly misgendering Plaintiff with incorrect gender pronouns.

33.     Defendants failed to prevent, correct, and remedy a hostile work environment they knew or should have known was occurring.

34.     On or about October 2023, Plaintiff identified to Defendants that Plaintiff no longer wanted to work with this specific resident any longer, or words to that effect.

35.     Plaintiff called and reported the conduct to the agency, who stated an intent to transfer Plaintiff.

36.     The resident simultaneously was transferred to the same facility, it is believed and therefore averred, at least in part, due to the resident's request.

37.     Plaintiff terminated his employment with Defendants.

38.     Plaintiff was constructively discharged on account of discrimination.

39.     Defendants are not permitted to accede to the bias of a resident with respect to the resident's care provider.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages

for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT II:**
**CONSTRUCTIVE DISCHARGE/TERMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, <u>et seq.</u>**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care <u>LLC)</u>**

40.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

41.     Plaintiff identifies as transgender.

42.     Plaintiff was assigned by Defendants as a Home Health Aide to care for resident, Jihad (sp.) Last Name Unknown ("LNU").

43.     In or around May 2023, it is believed that when Jihad LNU, one (1) of the residents whom Plaintiff was assigned by Defendants to care for, discovered Plaintiff's gender identity, Jihad (sp.) LNU revealed to other Home Health Aides employed by Defendants, that Plaintiff was transgender, outing Plaintiff beyond an extent to which Plaintiff felt comfortable to Plaintiff's coworkers.

44.     Plaintiff continued to be assigned to the same resident who outed Plaintiff.

45.     Plaintiff identified his preferred name and preferred pronouns of "he," "him," "his," to the resident.

46.     In or around October 2023, the resident frequently misgendered Plaintiff by using incorrect gender pronouns for Plaintiff.

47.     The resident also deadnamed Plaintiff by using a name for Plaintiff that was not Plaintiff's preferred name and was not consistent with Plaintiff's gender identity.

48.     The resident at issue referred to Plaintiff as a "b---h."

49.     The resident also sent Plaintiff a voice message stating that the resident knew Plaintiff was male, but to the resident Plaintiff was female, or words to that effect.

50.     Plaintiff reported his concerns about the resident to Nicole Hopkins, Owner and Administrator of Defendant, Elite Living Home Care.

51.     At one point, Plaintiff overheard Ms. Hopkins on speakerphone with the offending resident, and during the conversation, Ms. Hopkins kept repeatedly misgendering Plaintiff with incorrect gender pronouns.

52.     On or about October 2023, Plaintiff identified to Defendants that Plaintiff no longer wanted to work with this specific resident any longer, or words to that effect.

53.     Plaintiff called and reported the conduct to the agency, who stated an intent to transfer Plaintiff.

54.     The resident simultaneously was transferred to the same facility, it is believed and therefore averred, at least in part, due to the resident's request.

55.     Plaintiff terminated his employment with Defendants.

56.     Plaintiff was constructively discharged from his employment with Defendants on account of sex discrimination.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages

for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT III:**
**HOSTILE WORK ENVIRONMENT BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care <u>LLC)</u>**

57.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

58.     Plaintiff is a qualified individual with a disability.

59.     Plaintiff was perceived or regarded as disabled by Defendants.

60.     Defendants discriminated against Plaintiff based on Plaintiff's gender identity during Plaintiff's employment.

61.     Plaintiff identifies that the Americans with Disabilities Act ("ADA") includes "gender identity disorders."

62.     More specifically, Section 12211(b) of the ADA, provides that the definition of a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ***<u>gender identity disorders not resulting from physical impairments</u>***, [and] other sexual behavior disorders." 42 U.S.C. § 12211(b) (emphasis added).

63.     Medical science is evolving on the subject of whether there is a neuroanatomical impairment associated with being transgender, therefore, at this stage of the proceedings, the

Court should consider Plaintiff as having a neuroanatomical impairment associated with being transgender.

64.     Plaintiff disagrees with Section 12211(b) of the ADA's archaic and discriminatory language, "gender identity disorder not resulting from physical impairment," as Plaintiff, among other things, does not have a "disorder"—Plaintiff is transgender and suffers from a disability in the form of clinically significant distress associated with being transgender—but it is acknowledged that Section 12211(b) of the ADA is attempting to describe Plaintiff's condition, though in an inartful manner.

65.     The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is discriminatory and violates due process, to wit:

66.     There is a basic guarantee of dignity and due process under the Fifth Amendment. Plaintiff is pursuing a substantive due process challenge based on a fundamental right or suspect class.  Plaintiff is not pursuing a procedural due process challenge.

67.     Plaintiff is a member of a protected class of people who are transgender.

68.     The GID exclusion fails strict scrutiny which is the standard of review applicable to people who are transgender.

69.     The GID exclusion fails heightened or intermediate scrutiny applicable to sex-based classifications.  See Bostock v. Clayton County, Georgia, Nos. 17-1618, 590 U.S. ___, 140 S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020) (holding that discrimination based on transgender status constitutes discrimination based on sex).

70.     The GID exclusion violates the "rational basis with bite" standard of review found to be applicable to anti-LGBTQIA+ bias.  See, e.g., Romer v. Evans, 517 U.S. 620 (1996); Lawrence v. Texas, 539 U.S. 558 (2003); United States v. Windsor, 133 S. Ct. 2576 (2013);

Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (applying the 'rational basis with bite' standard of review).

71.     The GID exclusion fails the rational basis standard of review.  There is no rational basis for the GID exclusion.  "[A] bare congressional desire to harm a politically unpopular group cannot justify disparate treatment of that group."  Dep't of Agriculture v. Moreno, 413 U.S. 528, 534-35 (1973).

72.     The GID exclusion is unconstitutional on its face.

73.     The GID exclusion is unconstitutional as applied to the Plaintiff.

74.     The GID exclusion has created second-class citizens of people who are transgender and gender non-conforming.

75.     The GID exclusion deprives Plaintiff and other people who are transgender and gender non-conforming of dignity and due process.

76.     It is time for a judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional.  This is not advisory.  Transgender people are being made second-class citizens under the law.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training

for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT IV:**
**FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE**
**AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101,**
**<u>et seq.</u>**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care**
**<u>LLC)</u>**

77.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

78.    Plaintiff is a qualified individual with a disability.

79.    Plaintiff was perceived or regarded as disabled by Defendants.

80.    Defendants failed to accommodate Plaintiff's use of gender pronouns and preferred name during Plaintiff's employment.

81.    Plaintiff identifies that the Americans with Disabilities Act ("ADA") includes "gender identity disorders."

82.    More specifically, Section 12211(b) of the ADA, provides that the definition of a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ***<u>gender identity disorders not resulting from physical impairments</u>***, [and] other sexual behavior disorders." 42 U.S.C. § 12211(b) (emphasis added).

83.    Medical science is evolving on the subject of whether there is a neuroanatomical impairment associated with being transgender, therefore, at this stage of the proceedings, the Court should consider Plaintiff as having a neuroanatomical impairment associated with being transgender.

84.    Plaintiff disagrees with Section 12211(b) of the ADA's archaic and discriminatory language, "gender identity disorder not resulting from physical impairment," as

12

Plaintiff, among other things, does not have a "disorder"—Plaintiff is transgender and suffers from a disability in the form of clinically significant distress associated with being transgender—but it is acknowledged that Section 12211(b) of the ADA is attempting to describe Plaintiff's condition, though in an inartful manner.

85.     The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is discriminatory and violates due process, to wit:

86.     There is a basic guarantee of dignity and due process under the Fifth Amendment. Plaintiff is pursuing a substantive due process challenge based on a fundamental right or suspect class.  Plaintiff is not pursuing a procedural due process challenge.

87.     Plaintiff is a member of a protected class of people who are transgender.

88.     The GID exclusion fails strict scrutiny which is the standard of review applicable to people who are transgender.

89.     The GID exclusion fails heightened or intermediate scrutiny applicable to sex-based classifications.  See Bostock v. Clayton County, Georgia, Nos. 17-1618, 590 U.S. ___, 140 S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020) (holding that discrimination based on transgender status constitutes discrimination based on sex).

90.     The GID exclusion violates the "rational basis with bite" standard of review found to be applicable to anti-LGBTQIA+ bias.  See, e.g., Romer v. Evans, 517 U.S. 620 (1996); Lawrence v. Texas, 539 U.S. 558 (2003); United States v. Windsor, 133 S. Ct. 2576 (2013); Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (applying the 'rational basis with bite' standard of review).

91.     The GID exclusion fails the rational basis standard of review.  There is no rational basis for the GID exclusion.  "[A] bare congressional desire to harm a politically unpopular

group cannot justify disparate treatment of that group." <u>Dep't of Agriculture v. Moreno</u>, 413 U.S. 528, 534-35 (1973).

92.     The GID exclusion is unconstitutional on its face.

93.     The GID exclusion is unconstitutional as applied to the Plaintiff.

94.     The GID exclusion has created second-class citizens of people who are transgender and gender non-conforming.

95.     The GID exclusion deprives Plaintiff and other people who are transgender and gender non-conforming of dignity and due process.

96.     It is time for a judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional.  This is not advisory.  Transgender people are being made second-class citizens under the law.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

## COUNT V:
### CONSTRUCTIVE DISCHARGE/TERMINATION BASED ON DISABILITY IN VIOLATION OF THE
### AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, <u>et seq.</u>

14

**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care LLC)**

97.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

98.     Plaintiff is a qualified individual with a disability.

99.     Plaintiff was perceived or regarded as disabled by Defendants.

100.     Defendants constructively discharged Plaintiff from employment based on Plaintiff's gender identity during Plaintiff's employment.

101.     Plaintiff identifies that the Americans with Disabilities Act ("ADA") includes "gender identity disorders."

102.     More specifically, Section 12211(b) of the ADA, provides that the definition of a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ___gender identity disorders not resulting from physical impairments___, [and] other sexual behavior disorders."  42 U.S.C. § 12211(b) (emphasis added).

103.     Medical science is evolving on the subject of whether there is a neuroanatomical impairment associated with being transgender, therefore, at this stage of the proceedings, the Court should consider Plaintiff as having a neuroanatomical impairment associated with being transgender.

104.     Plaintiff disagrees with Section 12211(b) of the ADA's archaic and discriminatory language, "gender identity disorder not resulting from physical impairment," as Plaintiff, among other things, does not have a "disorder"—Plaintiff is transgender and suffers from a disability in the form of clinically significant distress associated with being transgender— but it is acknowledged that Section 12211(b) of the ADA is attempting to describe Plaintiff's condition, though in an inartful manner.

105.     The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. §
12211(b) is discriminatory and violates due process, to wit:

106.     There is a basic guarantee of dignity and due process under the Fifth Amendment.
Plaintiff is pursuing a substantive due process challenge based on a fundamental right or suspect
class.  Plaintiff is not pursuing a procedural due process challenge.

107.     Plaintiff is a member of a protected class of people who are transgender.

108.     The GID exclusion fails strict scrutiny which is the standard of review applicable
to people who are transgender.

109.     The GID exclusion fails heightened or intermediate scrutiny applicable to sex-
based classifications.  See Bostock v. Clayton County, Georgia, Nos. 17-1618, 590 U.S. ___, 140
S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020) (holding that discrimination based on
transgender status constitutes discrimination based on sex).

110.     The GID exclusion violates the "rational basis with bite" standard of review found
to be applicable to anti-LGBTQIA+ bias.  See, e.g., Romer v. Evans, 517 U.S. 620 (1996);
Lawrence v. Texas, 539 U.S. 558 (2003); United States v. Windsor, 133 S. Ct. 2576 (2013);
Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (applying the 'rational basis with bite' standard of
review).

111.     The GID exclusion fails the rational basis standard of review.  There is no rational
basis for the GID exclusion.  "[A] bare congressional desire to harm a politically unpopular
group cannot justify disparate treatment of that group."  Dep't of Agriculture v. Moreno, 413
U.S. 528, 534-35 (1973).

112.     The GID exclusion is unconstitutional on its face.

113.     The GID exclusion is unconstitutional as applied to the Plaintiff.

114.    The GID exclusion has created second-class citizens of people who are transgender and gender non-conforming.

115.    The GID exclusion deprives Plaintiff and other people who are transgender and gender non-conforming of dignity and due process.

116.    It is time for a judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional.  This is not advisory.  Transgender people are being made second-class citizens under the law.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

### COUNT VI:
### HARASSMENT/HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA"), 43 P.S. §§ 951, et seq.
### (Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care LLC)

117.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

118.    Plaintiff identifies as transgender.

119.    Plaintiff was assigned to care for resident, Jihad (sp.) Last Name Unknown ("LNU").

120.    In or around May 2023, it is believed that when Jihad (sp.) LNU, one (1) of the residents whom Plaintiff was assigned by Defendants to care for, discovered Plaintiff's gender identity, Jihad (sp.) LNU revealed to other Home Health Aides employed by Defendants, that Plaintiff was transgender, outing Plaintiff beyond an extent to which Plaintiff felt comfortable to Plaintiff's coworkers.

121.    Plaintiff had not previously identified himself as transgender to the co-employees.

122.    Plaintiff continued to be assigned to the same resident who outed Plaintiff.

123.    Plaintiff identified his preferred name and preferred pronouns of "he," "him," "his," to the resident.  In or around October 2023, the resident frequently misgendered Plaintiff by using incorrect gender pronouns for Plaintiff.

124.    The resident also deadnamed Plaintiff by using a name for Plaintiff that was not Plaintiff's preferred name and was not consistent with Plaintiff's gender identity.

125.    The resident at issue referred to Plaintiff as a "b---h."

126.    The resident also sent Plaintiff a voice message stating that the resident knew Plaintiff was male, but to the resident Plaintiff was female, or words to that effect.

127.    Plaintiff reported his concerns about the resident to Nicole Hopkins, Owner and Administrator of Defendant, Elite Living Home Care.

128.    At one point, Plaintiff overheard Ms. Hopkins on speakerphone with the offending resident, and during the conversation, Ms. Hopkins kept repeatedly misgendering Plaintiff with incorrect gender pronouns.

129.    Defendants failed to prevent, correct, and remedy a hostile work environment they knew or should have known was occurring.

130.    On or about October 2023, Plaintiff identified to Defendants that Plaintiff no longer wanted to work with this specific resident any longer, or words to that effect.

131.    Plaintiff called and reported the conduct to the agency, who stated an intent to transfer Plaintiff.

132.    The resident simultaneously was transferred to the same facility, it is believed and therefore averred, at least in part, due to the resident's request.

133.    Plaintiff terminated his employment with Defendants.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT VII:**
**CONSTRUCTIVE DISCHARGE/TERMINATION BASED ON SEX IN VIOLATION OF**
**THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA"),**
**43 P.S. §§ 951, et seq.**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care LLC)**

134.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

135.     Plaintiff identifies as transgender.

136.     Plaintiff was assigned to care for resident, Jihad (sp.) Last Name Unknown ("LNU").

137.     In or around May 2023, it is believed that when Jihad (sp.) LNU, one (1) of the residents whom Plaintiff was assigned by Defendants to care for, discovered Plaintiff's gender identity, Jihad (sp.) LNU revealed to other Home Health Aides employed by Defendants, that Plaintiff was transgender, outing Plaintiff beyond an extent to which Plaintiff felt comfortable to Plaintiff's coworkers.

138.     Plaintiff had not previously identified himself as transgender to the co-employees.

139.     Plaintiff continued to be assigned to the same resident who outed Plaintiff.

140.     Plaintiff identified his preferred name and preferred pronouns of "he," "him," "his," to the resident.  In or around October 2023, the resident frequently misgendered Plaintiff by using incorrect gender pronouns for Plaintiff.

141.     The resident also deadnamed Plaintiff by using a name for Plaintiff that was not Plaintiff's preferred name and was not consistent with Plaintiff's gender identity.

142.     The resident at issue referred to Plaintiff as a "b---h."

143.     The resident also sent Plaintiff a voice message stating that the resident knew Plaintiff was male, but to the resident Plaintiff was female, or words to that effect.

144.     Plaintiff reported his concerns about the resident to Nicole Hopkins, Owner and Administrator of Defendant, Elite Living Home Care.

145.     At one point, Plaintiff overheard Ms. Hopkins on speakerphone with the offending resident, and during the conversation, Ms. Hopkins kept repeatedly misgendering Plaintiff with incorrect gender pronouns.

146.     Defendants failed to prevent, correct, and remedy a hostile work environment they knew or should have known was occurring.

147.     On or about October 2023, Plaintiff identified to Defendants that Plaintiff no longer wanted to work with this specific resident any longer, or words to that effect.

148.     Plaintiff called and reported the conduct to the agency, who stated an intent to transfer Plaintiff.

149.     The resident simultaneously was transferred to the same facility, it is believed and therefore averred, at least in part, due to the resident's request.

150.     Plaintiff terminated his employment with Defendants.

151.     Defendants constructively discharged/terminated Plaintiff from his employment with Defendants.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT VIII:**
**HOSTILE WORK ENVIRONMENT BASED ON GENDER IDENTITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101, <u>et seq.</u>, OF THE PHILADELPHIA CODE (Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care <u>LLC</u>)**

21

152.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

153.    Plaintiff identifies as transgender.

154.    Defendants discriminated against Plaintiff in violation of the PFPO, at Section 9-1101, et seq., of the Philadelphia Code.

155.    The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

156.    Defendants engaged in "discrimination" as defined by the PFPO which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . sex," or "gender identity."  § 9-1102(e).

157.    The PFPO explicitly protects Plaintiff from discrimination on the basis of his "gender identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of herein.

158.    The PFPO prohibits discrimination on the basis of sex, gender, gender identity, gender transition, and gender stereotyping.

159.    Plaintiff was subjected to harassment and a hostile work environment during his employment with Defendants.

160.    Defendants failed to prevent, correct, and remedy the hostile work environment of which they knew or should have known.

161.    Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

162.     Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT IX:**
**CONSTRUCTIVE DISCHARGE/TERMINATION BASED ON GENDER IDENTITY**
**IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE**
**("PFPO"), CHAPTER 9-1100, SECTION 9-1101, <u>et seq.</u>, OF THE PHILADELPHIA**
**CODE**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care**
**<u>LLC)</u>**

163.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

164.     Plaintiff identifies as transgender.

165.     Defendants discriminated against Plaintiff in violation of the PFPO, at Section 9-1101, et seq., of the Philadelphia Code.

166.     The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

167.     Defendants engaged in "discrimination" as defined by the PFPO which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . sex," or "gender identity."  § 9-1102(e).

168.     The PFPO explicitly protects Plaintiff from discrimination on the basis of his "gender identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of herein.

169.     The PFPO prohibits discrimination on the basis of sex, gender, gender identity, gender transition, and gender stereotyping.

170.     Defendants constructively discharged/terminated Plaintiff from his employment based on his gender identity in violation of the PFPO.

171.     Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

172.     Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully

below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT X:**
**HOSTILE WORK ENVIRONMENT BASED ON DISABILITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101, et seq., OF THE PHILADELPHIA CODE**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care LLC)**

173.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

174.    Defendants discriminated against Plaintiff in violation of the PFPO, at Section 9-1101, et seq., of the Philadelphia Code.

175.    The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

176.    Defendants engaged in "discrimination" as defined by the PFPO which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . disability."  § 9-1102(e).

177.     The PFPO explicitly protects Plaintiff from discrimination on the basis of his "gender identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of herein.

178.     Plaintiff was subjected to harassment and a hostile work environment during his employment with Defendants.

179.     Defendants failed to prevent, correct, and remedy the hostile work environment of which they knew or should have known.

180.     Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

181.     Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

182.     There is no so-called GID exclusion codified in the PFPO—to the contrary, "gender identity" is specifically included as a protected class in the PFPO—therefore, Plaintiff may state a neuroanatomical impairment based on his transgender status under the PFPO.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime,

benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

## COUNT XI:
### FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101, et seq., OF THE PHILADELPHIA CODE
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care LLC)**

183.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

184.    Defendants discriminated against Plaintiff in violation of the PFPO, at Section 9-1101, et seq., of the Philadelphia Code.

185.    The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

186.    Defendants engaged in "discrimination" as defined by the PFPO which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . disability."  § 9-1102(e).

187.    The PFPO explicitly protects Plaintiff from discrimination on the basis of his "gender identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of herein.

188.    Defendants failed to accommodate Plaintiff's use of preferred name and pronouns during his employment with Defendants.

27

189.    Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

190.    Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

191.    There is no so-called GID exclusion codified in the PFPO—to the contrary, "gender identity" is specifically included as a protected class in the PFPO—therefore, Plaintiff may state a neuroanatomical impairment based on his transgender status under the PFPO.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT XII:**
**CONSTRUCTIVE DISCHARGE/TERMINATION BASED ON DISABILITY IN**
**VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"),**
**CHAPTER 9-1100, SECTION 9-1101, et seq., OF THE PHILADELPHIA CODE**
**(Plaintiff, John Doe v. Defendants, Elite Living Home Care and Elite Living Home Care**
**LLC)**

192.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

193.    Defendants discriminated against Plaintiff in violation of the PFPO, at Section 9-1101, et seq., of the Philadelphia Code.

194.    The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

195.    Defendants engaged in "discrimination" as defined by the PFPO which prohibits discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or "denial," "on the basis of actual or perceived . . . disability."  § 9-1102(e).

196.    The PFPO explicitly protects Plaintiff from discrimination on the basis of his "gender identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of herein.

197.    Defendants constructively discharged/terminated Plaintiff's employment with Defendants based on Plaintiff's actual and/or perceived disability in violation of the PFPO.

198.    Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

199.    Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein,

on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

200.    There is no so-called GID exclusion codified in the PFPO—to the contrary, "gender identity" is specifically included as a protected class in the PFPO—therefore, Plaintiff may state a neuroanatomical impairment based on his transgender status under the PFPO.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of eight (8) members on all counts so triable.

DATED:  05/28/2024                        Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600

PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Justin F. Robinette, Esquire, Attorney for Plaintiff, in the above-named matter, do hereby certify that on this <u>28th</u> day of <u>MAY</u>, <u>2024</u>, the foregoing Complaint was served via the method set forth below, on the date set forth below, or as soon thereafter as service can be effectuated:

### *<u>VIA ELECTRONIC MAIL ONLY</u>*

Gerard P. Egan, Esquire
Brian McCarthy, Esquire
Egan & McCarthy
657 Exton Commons,
Exton, PA 19341
gpelaw513@gmail.com
eganmccarthylaw@gmail.com

DATED:  <u>05/28/2024</u>                    Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff*