**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DOE | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  24-1035 |
| | : | |
| ELITE LIVING HOME CARE, ELITE | : | |
| LIVING HOME CARE LLC | : | |

## <u>MEMORANDUM</u>

MURPHY, J.                                                              August 21, 2024

      This is a decision on a motion to dismiss a complaint alleging discrimination under Title VII, the ADA, and similar state and local laws.  The plaintiff worked for a home healthcare provider and alleges that a patient harassed him because of his transgender identity.  Plaintiff may have asked the defendant for reassignment, and that may have been denied, but it is not entirely clear from the amended complaint.  Plaintiff decided to quit the job, and now sues his former employer.  Because the amended complaint had many facial deficiencies, we held oral argument to try to get clarification and put the case on a track moving forward.  There was not much clarification to be had, so instead we will dismiss the amended complaint and provide the written guidance below.  Plaintiff has leave to amend.

## I.      Background according to the amended complaint.

      Plaintiff Mr. Doe worked for defendant Elite Living as a home health aide.[1]  DI 6 ¶ 14. Mr. Doe's job duties "consisted of providing home healthcare services to residents of [Elite Living] in the residents' homes."  *Id.* ¶ 15.[2]  Elite Living assigned Mr. Doe to care for an

---

[1] Plaintiff sued two Elite Living entities but any differences are immaterial at this time. DI 6 ¶ 2-3.

[2] The phasing of that sentence from the amended complaint is confusing because it

individual identified only as "Jihad." *Id.* ¶ 16.

Mr. Doe identifies as transgender, but had not previously shared this with his co-employees. *Id.* ¶¶ 12, 18. Jihad discovered Mr. Doe's gender identity and revealed that to Mr. Doe's co-employees. *Id.* ¶ 17. Jihad also "frequently misgendered" Mr. Doe by using incorrect gender pronouns "[i]n or around October 2023" and "deadnamed" Mr. Doe, which means using a name for Mr. Doe that was not his preferred name "and was not consistent with [Mr. Doe's] gender identity." *Id.* ¶¶ 20-21. Further, Jihad "also referred to [Mr. Doe] as a bitch" in one instance. *Id.* ¶ 29. Finally, Jihad sent Mr. Doe a voice message "stating that [he] knew [Mr. Doe] was male, but to [him] [Mr. Doe] was female, or words to that effect." *Id.* ¶ 30.

At some point, Mr. Doe "reported his concerns" about Jihad "to Nicole Hopkins, Owner and Administrator of [Elite Living]." *Id.* ¶ 31. Mr. Doe "overheard Ms. Hopkins on speakerphone with [Jihad], and during the conversation, Ms. Hopkins kept repeatedly misgendering [Mr. Doe] with incorrect gender pronouns." *Id.* ¶ 32. "On or about October 2023, [Mr. Doe] identified to [Elite Living] that [Mr. Doe] no longer wanted to work with [Jihad] any longer." *Id.* ¶ 34. Then Mr. Doe "called and reported to the conduct to the agency [Elite Living, presumably], who stated an intent to transfer" Mr. Doe. *Id.* ¶ 35. It is unclear what happened next, because the allegation is confusing: "The resident [Jihad?] simultaneously was transferred to the same facility [?], it is believed and therefore averred, at least in part, due to the resident's

---

muddles whether the Elite Living patients/customers are living in their own homes or living in an Elite Living facility. That confusion crops up several times in the amended complaint. Elite Living is emphatic that there are no facilities, and the patients are treated in their own homes. For reasons that are unclear, Mr. Doe does not really dispute this, but does not concede the point either. At oral argument, it seemed as though counsel for Mr. Doe simply did not know, which itself is confusing.

request." *Id.* ¶ 36.  We made some earnest efforts at oral argument to find out what was meant by this, what happened to Mr. Doe, how Jihad could be transferred from his own home, and to where, but counsel for Mr. Doe simply did not know what happened.  In any event, Mr. Doe resigned. *Id.* ¶ 37.

Mr. Doe sought administrative remedies and attached an EEOC right-to-sue notice to the amended complaint.  *Id.* ¶ 10; DI 6-1.  Neither the amended complaint nor the right-to-sue notice indicate whether Mr. Doe cross-filed with the Pennsylvania Human Relations Commission (PennHRC), or filed with the Philadelphia Commission on Human Relations (PhilaCHR).  Nor is there any indication of what sort of claims Mr. Doe made with the EEOC.

In this lawsuit, Mr. Doe states 12 counts.  Count I is a Title VII hostile work environment claim based on sex discrimination.  Count II is a Title VII constructive discharge claim.  Count III is an ADA hostile work environment claim.  Count IV is an ADA failure-to-accommodate claim.  Count V is an ADA constructive discharge claim.  Counts VI and VII are parallel to counts I and II, but brought under the Pennsylvania Human Relations Act (PHRA).  The remaining counts (VIII through XII) are brought under the Philadelphia Fair Practices Ordinance (PFPO).

Elite Living moved to dismiss the amended complaint.  DI 13.  Mr. Doe then filed an unauthorized second amended complaint (incorrectly labeled as an amended complaint).  DI 14.  Elite Living moved to dismiss that too.  DI 15.  We ordered responses to both and oral argument.  DI 16.  Mr. Doe then effectively withdrew the second amended complaint but opposed Elite Living's first motion to dismiss.  DI 17.

## II.     Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021).  Deciding whether a complaint is facially plausible is "context-specific, requiring the reviewing court to draw on its experience and common sense."  *Iqbal*, 556 U.S. at 663-64.

"Assessing plausibility under *Twombly* and *Iqbal* is a three-step process."  *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 661 (E.D. Pa. 2021).  "The first step in that process requires an articulation of the elements of the claim."  *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022).  The second step is "identify[ing] those allegations that, being merely conclusory, are not entitled to the presumption of truth."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  Courts do not grant the presumption of truth to allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual."  *Id.* at 790.  The third step asks courts to assume the veracity of any well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief."  *McDermid*, 520 F. Supp. 3d at 661 (quoting *Connelly*, 809 F.3d at 787).

### III.    Analysis

**The Title VII claims are dismissed.**

Elite Living argues that Mr. Doe's Title VII claims, counts I and II, should be dismissed because they fail to allege a hostile work environment based on gender discrimination and fail to plausibly plead constructive discharge.  DI 13-1 at 9-13.  We agree.

"To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability."  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).  Elite Living argues that Mr. Doe failed to allege respondeat superior liability because Jihad — who delivered most of the insults — was not an employee of Elite Living.  We tend to agree with Mr. Doe that it may be possible to establish respondeat superior liability in a situation like this where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to correct it in an appropriate manner. *See, e.g., Johnson-Harris v. AmQuip Cranes Rental*, LLC, No. 14-767, 2015 WL 4113542, at *8 (E.D. Pa. July 8, 2015).  But the pleadings are too thin on that point — what did Elite Living know, when did it know it, and what actions were or were not taken in response?  Further, the respondeat superior allegations need to make sense in light of how the pleadings emphasize

"severe" over "pervasive" conduct.[3]   Thus, count I, Title VII hostile work environment, must be dismissed.

Turning to constructive discharge, the first problem is that the amended complaint is unclear on the theory — did the alleged hostile workplace cause the constructive discharge?  Or was it the actions of Ms. Hopkins?  DI 6 ¶¶ 40-56.  Best as we can tell, Mr. Doe is trying to allege that Elite Living (through Ms. Hopkins) "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Lanza v. Postmaster Gen. of the U.S.,* 570 F. App'x 236, 240 (3d Cir. 2014) (quoting *Cardenas v. Massey*, F.3d 251, 263 (3d. Cir. 2001)).  The pleadings do not hit on any of the factors identified by the Third Circuit as tending to show constructive discharge: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations." *Lebofsky v. City of Phila.*, 394 F. App'x 935, 939 (3d Cir. 2010) (citation omitted).  Rather, according to the amended complaint, Mr. Doe had one serious conversation with Ms. Hopkins, and it is unclear what her response was, or what happened next.  DI 6 ¶¶ 52-54.  That cannot sustain a claim of constructive discharge, so we will dismiss count II.

---

[3] Elite Living argued that the pleadings fail to establish the "severe or pervasive" conduct necessary for a hostile work environment claim.  We agree with the "pervasive" part because all the conduct (at least, as best as we can tell) occurred in a short window of time, and there is no sense that the conduct pervaded the day in and day out of Mr. Doe's job.  But severity is pled sufficiently to avoid dismissal.  *See Castleberry v. STI Grp.*, 863 F.3d 259, 264-65 (3d Cir. 2017) (discouraging dismissal of extreme-incident complaints).

**The ADA claims are dismissed.**

Elite Living argues that Mr. Doe's ADA allegations, counts III, IV, and V, should be dismissed because Mr. Doe did not plead that: (i) he has a disability; (ii) Elite Living failed to provide reasonable accommodations; or (iii) Elite Living discriminated against Mr. Doe for any perceived disability.  DI 13-1 at 14-16.  We agree with all three arguments.  On the nature of the disability, although the amended complaint alleges that Mr. Doe is disabled or perceived as disabled, the amended complaint never says what the disability is.  DI 6 ¶ 58-61.  The amended complaint appears to loosely connect Mr. Doe's "member[ship] of a protected class of people who are transgender" with the ADA claim, DI 6 at 9 (cleaned up), but not in any way that states a claim.  *See Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (ADA complaint must at least establish that plaintiff "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability").[4]  As for failure to accommodate, there is insufficient discussion in the amended complaint of what accommodation was requested and then what happened next, nor could counsel for Mr. Doe explain further at oral argument.  DI 6 ¶¶ 31-36 (cleaned up); *see Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009) (describing elements a plaintiff must prove "for a covered entity to be found liable for discrimination on the basis of failure to accommodate" and discussing the interactive process).

---

[4] The amended complaint attacks the "gender identity disorder exclusion," 42 U.S.C. § 12211(b), as unconstitutional, but it is not at all clear how that would be implicated in the ADA claims.  Nor is it necessary to address the Rule 5.1 issue or Elite Living's standing arguments.

Two other points.  To the extent that the ADA claims require an adverse employment decision, and that hinges on the alleged constructive discharge, the claims must be dismissed for the same reasons discussed above for the Title VII constructive discharge claim.  Finally, ADA claims must be exhausted, and as the amended complaint reads, it is unclear whether Mr. Doe's EEOC charge addressed any conduct that might violate the ADA.  That is yet another reason why the ADA claims must be dismissed.  *Williams v. E. Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010); *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)

**The PHRA claims are dismissed.**

Elite Living argues that Mr. Doe's allegations under the PHRA, counts VI and VII, should be dismissed for the same reasons as the Title VII claims to which they are parallel, and also because Mr. Doe failed to cross-file his administrative claim with the PennHRC.  DI 13-1 at 16.  We agree, for both reasons.  The substantive reasons are same as discussed above for Title VII.  Administratively, a plaintiff "must exhaust all required administrative remedies before bringing a claim for judicial relief."  *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). For the PHRA, that means filing a charge of discrimination with the PennHRC and waiting for a right-to-sue notice.  43 Pa. Stat. § 959(h); *Mandel*, 706 F.3d at 164.  The PHRA can be exhausted by dual filing with the EEOC and PennHRC.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926 n.12, 927 (3d Cir. 1997).  But either way, the analysis requires examining the charge filed with the agency to see what conduct was mentioned.  *Mandel*, 706 F.3d at 163-65.  A plaintiff's claim must fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."  *Antol*, 82 F.3d at 1295.  Here, there is no indication in the amended complaint or the right-to-sue letter of whether a charge was filed with the PennHRC, if

any charge filed with the EEOC was dual filed with the PennHRC, or, if some charge was filed, what conduct was discussed.  Thus, the PHRA claims must be dismissed.

**The PFPO claims are dismissed.**

Elite Living argues that Mr. Doe's allegations under the PFPO, counts VIII through XII, must be dismissed because Mr. Doe did not allege that he filed a complaint with PhilaCHR.  DI 13-1 at 16-17.  We agree.  Judges in this district differ on this point, but here we adopt and incorporate the reasoning and conclusion of our holding in *Mouzone v. University of Pennsylvania Health System*, No. 23-cv-19, 2023 WL 7167565 (E.D. Pa. Oct. 31, 2023).  Because Mr. Doe did not file a charge with the PhilaCHR, he is not "a person entitled to the private right of action provided by the PFPO." *Id.* at *7 (citing Phila. Code § 9-1122(1)).  Accordingly, counts VIII through XII will be dismissed.

**IV.     Conclusion**

For the reasons explained above, the motion to dismiss (DI 13) is granted and the amended complaint (DI 6) is dismissed.  The other motion to dismiss (DI 15) will be denied as moot, and the incorrectly labeled second amended complaint (DI 14) will be struck from the docket.  We will make the dismissal without prejudice and give Mr. Doe leave to file a second amended complaint, if any of the above defects can be cured, within 14 days.  A word of caution: the complaint(s) in this case are confusing and replete with legal argument yet lacking in factual allegations tending to support viable legal theories.  Any second amended complaint needs to be crystal clear on the facts.